IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEAN CARLOS CRISTANCHO NAVA,<br>A 243 032 593,<br>        **Petitioner,**<br><br>        v.<br><br>JAMAL L. JAMISON, in his official<br>capacity as the Facility Administrator of<br>the Philadelphia Federal Detention Center,<br>MICHAEL T. ROSE, in his official<br>capacity as Acting Philadelphia Field Office<br>Director for U.S. Immigration and Customs<br>Enforcement,<br>TODD LYONS, Acting Director of U.S.<br>Immigration and Customs Enforcement,<br>U.S. IMMIGRATION AND CUSTOMS<br>ENFORCEMENT,<br>KRISTI NOEM, Secretary of the U.S.<br>Department of Homeland Security, in her<br>official capacity,<br>U.S. DEPARTMENT OF HOMELAND<br>SECURITY,<br>PAMELA BONDI, Attorney General of the<br>United States, in her official capacity and<br>U.S. DEPARTMENT OF JUSTICE,<br>        **Respondents.** | CIVIL ACTION<br><br><br><br>NO.  26-151 |

**MEMORANDUM**

HODGE, J.                                                            January 16, 2026

Petitioner Jean Carlos Cristiancho Nava ("Petitioner" or "Mr. Cristiancho Nava") is yet

another of the numerous individuals who have been recently detained by immigration authorities

under the new decision by the Bureau of Immigration Appeals ("BIA"). BIA's interpretation of

the Immigration and Nationality Act ("INA") § 235, 8 U.S.C. § 1225, would permit it to treat an

immigrant as "seeking admission" who was not inspected upon arrival in the country even if they

arrived in the country years ago. Such treatment results in detention without any hearing. This

Court again joins with the hundreds of decisions rejecting BIA's analysis, and grants Mr. Cristiancho Nava's petition for a writ of habeas corpus (ECF No. 1) and orders his immediate release.[1]

## I.    BACKGROUND[2]

Respondents do not dispute the facts as stated in Mr. Cristiancho Nava's petition, and therefore the Court accepts them as true. (ECF No. 4 at 3.) Mr. Cristiancho Nava is a citizen of Venezuela. (ECF No. 1 at ¶ 25.) He opposes the authoritarian practices of the Venezuelan government, and while in Venezuela he supported democratic reforms, free expression, and protection of civil liberties. (*Id.* ¶ 27.) Because of his political beliefs, he faces persecution from Venezuelan state actors. (*Id.* ¶ 28.) On or about August 23, 2022, Mr. Cristiancho Nava entered the United States to seek asylum and was subsequently released by a border official into the United States. (*Id.* ¶ 29.) He timely applied for asylum and Temporary Protected Status. (*Id.* ¶¶ 29–31.) He is married and has two young children, one of whom is a United States citizen. (*Id.* ¶ 25.) He has no history of criminal activity. (*Id.* ¶ 33.)

On or about January 8, 2026, Mr. Cristiancho Nava, along with his wife and child, attended a routine check-in appointment with Immigration and Customs Enforcement ("ICE"). (*Id.* ¶ 34.) At this routine appointment, he was separated from his wife and child, and was detained at the Philadelphia Federal Detention Center, where he remains. (*Id.* ¶¶ 35–36.) He was not informed of why he was being detained or why he was separated from his wife and child. (*Id.*)

---

[1] Respondents submit that this matter can be resolved on the briefs and without a hearing. (ECF No. 4 at 16 n.4.)

[2] The Court adopts the pagination supplied by the CM/ECF docketing system.

## II.    LEGAL STANDARD

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . ." The burden is on the petitioner to show that his confinement is unlawful. *Goins v. Brierley*, 464 F.2d 947, 949 (3d Cir. 1972).

## III.    DISCUSSION

Respondents argue this Court lacks jurisdiction to hear Mr. Cristiancho Nava's claims pursuant to 8 U.S.C. §§ 1252(g), 1252(b)(9), and 1252(a)(2)(B)(ii). (ECF No. 4 at 5–9.) However, as my colleagues and I have explained repeatedly in numerous similar opinions issued on the same issue that is now before this Court, none of these statutes are applicable to the instant Petition. Indeed, as of December 16, 2025, there had been close to 300 decisions addressing the issues raised by Petitioner in this case in district courts across the country. *Garcia-Zamora v. Jamison*, No. 25-6656, 2025 WL 3642088, at *2 (E.D. Pa. Dec. 16, 2025). Almost all the cases nationwide, and all of this district's cases, have found jurisdiction to be proper and proceeded to rule on the merits in favor of the petitioner. *See Ambriev v. Rose*, No. 26-85, 2026 WL 92285 (E.D. Pa. Jan. 13, 2026); *Salinas Jaigua v. Jamison*, No. 25-7115, 2025 WL 3757076 (E.D. Pa. Dec. 29, 2025) (collecting cases). This Court again adopts the reasoning of those decisions.

The primary issue the parties dispute is whether mandatory detention pursuant to Section 1225(b)(2)(A) is unlawful where, as here, a noncitizen is already present in the United States. Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding . . . ." By contrast, 8 U.S.C. § 1226(a) "applies to aliens already present in the United States," *Jennings*

3

*v. Rodriquez*, 583 U.S. 281, 303 (2018), and provides that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." The Attorney General "may release" noncitizens on "bond" or "conditional parole," except if they have committed any of the criminal offenses listed in Section 1226(c). 8 U.S.C. § 1226(a).

Reversing course, on July 8, 2025, the Department of Homeland Security ("DHS") issued a policy instructing all ICE employees to consider anyone deemed inadmissible under § 1182(a)(6)(A)(i)—*i.e.,* all those who entered the United States without admission or inspection—to be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond. This policy was subsequently enshrined in a September 5, 2025 decision by BIA, which took the position that all non-citizens who are present in the United States without admission are subject to mandatory detention under Section 1225(b) and that an immigration judge has no authority to consider their bond requests. *Matter of Yajure Hurtado*, 29 I.&N. Dec. 216 (B.I.A. 2025).

As the Supreme Court has explained, "aliens *already in the country* pending the outcome of removal proceedings" may be detained pursuant to Section 1226(a). *Jennings*, 583 U.S. at 289 (emphasis added). By contrast, Section 1225(b) "applies primarily to aliens seeking entry into the United States." *Id.* at 297. Respondents assert that Congress crafted the "applicants for admission" language of Section 1225(b)(2)(A) broadly to include noncitizens like Petitioner who are already present within the United States. (ECF No. 4 at 15.) However, as my colleagues have reasoned, if the Court accepts Respondents' argument that Section 1225(b)(2)(A) applies to all "applicant[s] for admission," then there was no need for Congress to specify that Section 1225(b)(2)(A) would apply to "alien[s] seeking admission." *Demirel v. Fed. Detention Center Phila.*, No. 25-5488, 2025

WL 3218243, at *4 (E.D. Pa. Nov. 18, 2025). This Court must grant "every clause and word of a statute . . . meaning" and render "no clause, sentence, or word . . . superfluous, void, or insignificant." *United States, ex rel. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). If this Court adopted the Government's reading of Section 1225(b)(2)(A) to apply to "all applicant[s] for admission," it would render the phrase "seeking admission" superfluous. However, the text "seeking admission" is not unnecessary and, thus, shall not be ignored by this Court.

Here, the parties do not dispute that Mr. Cristiancho Nava was already in the United States upon his detention on January 8, 2026. (ECF No. 1 at ¶ 34.) He was not actively "seeking admission." Rather, he had previously entered the country, applied for asylum and Temporary Protected Status, and resided here for over three years. There are no facts presented to this Court that demonstrate a basis for his detention absent a hearing. I therefore again join my colleagues and hold that Section 1225(b)(2)(A) cannot apply to Mr. Cristiancho Nava. *See Salinas Jaigua*, 2025 WL 3757076 (collecting cases).

Respondents assert that Mr. Cristiancho Nava's detention comports with due process. (ECF No. 4 at 15–16.) This Court strongly disagrees. The Fifth Amendment's Due Process Clause prevents the Government from depriving any person of "life, liberty, or property, without due process of law." The "Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To determine whether a government action violates due process, courts apply the balancing test outlined in *Mathews v. Eldridge*, which weighs: (1) the private interest implicated by the government action; (2) the risk of an erroneous deprivation

and the probable value of additional safeguards; and (3) the Government's interest, including administrative burdens of additional procedures. 424 U.S. 319, 334 (1976).

All three *Mathews* factors weigh in favor of Mr. Cristiancho Nava. In this instance, he has a strong private interest in his personal liberty. The failure of the Government to afford him *any* individualized determination regarding whether he posed a danger or flight risk poses a high risk of erroneous deprivation of his rights, while a bond hearing imposes minimal administrative burden. Respondents have set forth no facts suggesting he is more of a danger or flight risk now than when he was released by a border patrol official in 2022. To the contrary, since arriving in the United States, Mr. Cristiancho Nava has (1) submitted an application for asylum, (2) has work authorization, a social security number, and no demonstrable criminal record, (3) has been raising his two children here, and (4) voluntarily appeared for a check-in with ICE, all of which indicate the opposite conclusion. Therefore, the application of the *Mathews* factors and constitutional due process necessitated a bond hearing prior to his detention on January 8, 2026. Because that hearing did not occur, he should not be in custody now.

IV.    **CONCLUSION**

For the aforementioned reasons, Petitioner's detention without a bond hearing offends the INA and the Due Process Clause of the Fifth Amendment. Therefore, this Court grants Petitioner's Petition, orders his immediate release, permanently enjoins the Government from re-detaining him under Section 1225(b)(2)(a), and temporarily enjoins the Government from re-detaining him under Section 1226(a) for seven days following his release. An appropriate Order follows.

BY THE COURT:

/s/ Hon. Kelley B. Hodge

HODGE, KELLEY B., J.

6